Filed 7/10/14  In re Dinah L. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DINAH L., et al., Persons Coming Under the Juvenile Court Law. | B251669 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Respondent,<br><br>v.<br><br>GABRIELLE L. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. No. CK89595) |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Truong, Referee and Carlos E. Vazquez, Judge.  Affirmed.

Aida Aslanian, under appointment by the Court of Appeal, for Appellant, Gabrielle L.

Jack A. Love, under appointment by the Court of Appeal, for Appellant, Leslie C.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Respondent.

Gabrielle L. (mother) and Leslie C. (father) appeal from the juvenile court's jurisdictional findings made in connection with a subsequent petition in an ongoing dependency case involving 13-year-old Dinah L., nine-year-old Elizabeth C., six-year-old Jacob L., and four-year-old Eduardo C.[1] Mother and father contend there was no substantial evidence supporting the court's findings that father hit Jacob on the shoulder or that mother allowed father to have unmonitored contact with the children. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Prior Child Abuse Referrals of Neglect and Physical Abuse*

There were multiple child abuse referrals in this case. In October 2005, the Department of Children and Family Services (Department) received a referral alleging that the children were unkempt. The Department did not investigate the allegation as it was unable to locate the referral source.

In November 2010, an anonymous caller alleged that she often heard mother screaming at the children and that the children were left home alone at night. In January 2011, the Department received a third referral alleging that Elizabeth, who was six years old at the time, was not being fed at home and had said that father hits her with his shoe when he is angry. During the Department's investigation of these referrals, Elizabeth told the social worker that her parents hit her with a shoe, that father hits her brothers who were one and three years old at the time, and that mother "told her not to

---

[1]    Father is the biological father of Elizabeth and Eduardo, and was found to be the presumed father of all four children.

say that her father hit her with a belt." The Department found that the neglect and physical abuse allegations were substantiated.[2]

2.    *The Department Receives a Referral Regarding Eduardo's Head Trauma*

On September 1, 2011, the Department received a referral alleging physical abuse of one-year-old Eduardo. Eduardo had fallen off the swing at daycare, sustaining a head injury. At the hospital, x-rays showed " 'unexplained healing rib fractures' " which the doctor opined had occurred at an earlier date. When a social worker interviewed the family, the parents denied that Eduardo had sustained any injuries while in their care.

On September 7, 2011, a petition was filed alleging that Eduardo had sustained "injuries [that] would not ordinarily occur except as the result of deliberate, unreasonable and neglectful acts by the child's mother and father who had care, custody and control of the child." These acts were alleged to have placed both Eduardo and his siblings at risk of physical harm. The case was assigned to Referee Terry Truong. At the detention hearing, the court detained the children from mother only, and ordered the three older children released to father over the Department's objection. Eduardo was detained in shelter care.

On September 19, 2011, the Department filed an Interim Review Report with the following evidence: (1) mother said she had been the victim of domestic violence for ten years, and was "terrified of [father] because he threatens her regularly by telling her

---

[2]    The Department initiated a case based on these substantiated allegations, but the record does not indicate how that case was processed or resolved.

3

that he will 'destroy her and her family' "; (2) Dinah, who was 10 years old at the time, said that father had "slapped her in the face very hard" and had "hit" her siblings; (3) maternal grandmother said that father "pushed and hit the children"; (4) the daycare worker said that "many times when [father] is in the home she can hear him screaming at the children"; and (5) father admitted to having hit Elizabeth. Included with the report was a doctor's statement opining that Eduardo's head trauma and rib fractures were "most consistent with inflicted injury, child abuse."

The Department recommended removing the children from the parents' care and assessing maternal grandmother as a possible caretaker. However, at trial setting conferences on September 21, October 14, November 7, and November 28, 2011, the court rejected the Department's recommendation and ordered that the three older children remain in father's custody.

On December 21, 2011, the Department filed a Supplemental Report, stating that father "ha[d] not been cooperative with following court orders, maintaining contact with this [department investigator] or [the social worker] . . . ha[d] failed to ensure that the children receive services as referred," and had refused to allow court-ordered visits with maternal grandmother. Included with the Department's report was a statement by a forensic expert opining that Eduardo's injuries were "classic shaken baby syndrome and blunt force head trauma." The expert reported that the "bleeding occurred around [Eduardo's] brain at least several weeks prior to the swing incident," and the "[rib] fractures . . . are weeks old. . . . The nature of these injuries suggests that Eduardo has been a chronic victim of abuse or neglect or both." The Department requested that the

4

children be detained from father and placed in foster care. However, the court did not detain the children, and, on December 22, 2011, allowed mother to move back into the home.

At the jurisdiction hearing on February 2, 2012, the court sustained the petition under Welfare and Institutions Code, section 300 and removed Eduardo from the custody of both parents.[3] The court ordered that the three older children remain in father's custody. Mother and father were offered reunification services, ordered to participate in parenting classes, and were allowed visitation with Eduardo.

On August 2, 2012, the Department reported to the court that the parents had been compliant with court orders and the Department case plan. However, the Department noted that "the perpetrator" of Eduardo's injuries was still unknown, and assessed the potential of future risk to the children as moderate. At the review hearing that day, the court returned all four children to the custody of both parents.

3. *The Department Receives Another Referral Alleging Physical Abuse*

On December 7, 2012, the Department received a referral alleging that Dinah and Elizabeth were being physically abused by father.[4] A social worker interviewed the girls the following week. Dinah said that father "hits her . . . 'a lot,' " and had choked, slapped and kicked her. Elizabeth said that father had hit her with a belt on her bare feet and "makes her stick three fingers inside his mouth and then he bites her fingers." He

---

[3]     All further statutory references are to the Welfare and Institutions Code.

[4]     Father was also arrested the following week on an outstanding warrant pending misdemeanor charges for child abuse. The record does not reveal the nature of those charges or how the criminal action against father was resolved.

was "abusive daily." Dinah said that father also "puts his hand under her shirt and rubs her stomach, which makes her feel uncomfortable." Both children said that father abused their siblings in the same manner and that they were frightened of him.

Dinah also said that she had told mother that father had choked her and had put his hand under her shirt, and mother had responded that she would talk to father. Mother admitted to the social worker that she was aware father had choked Dinah, and said she had "observed Dinah holding her neck and coughing." However, mother also said she "had no knowledge that father was abusive to her children," and now denied there had ever been any domestic violence. On December 28, 2012, the court granted a warrant for removal and the children placed with maternal grandmother.

One week later, the court returned the three younger children to mother's care. Dinah remained with maternal grandmother. The court allowed father to have monitored visits with the children but ordered that the visits were "not to be monitored by the mother or maternal grandmother." The Department filed a supplemental petition alleging that father physically abused the three older children and that mother knew of the abuse but allowed father to have unlimited access to the children.

4. *The Court is Provided With Continued Evidence of Father's Physical Abuse and Mother's Noncompliance With the Case Plan*

The Department interviewed the family further on January 16, 2013. Dinah said that mother had witnessed father hitting Eduardo, who was then two years old. However, mother still denied that father hit the children, and now claimed that she never knew that father had choked Dinah. The "[f]amily preservation team" stated that,

6

"based on statements from the children, father has been physical[ly] abusing the[m] for the duration of their lives." The Department also reported that mother was not compliant with family preservation services, and that Elizabeth said father still visited the home and had hit her and her brother in the past two days. Based on this evidence, the Department recommended removing the children from both parents' care and placing them with maternal grandmother. However, at the review hearings on January 24 and 31, 2013, the court ordered that the three younger children remain in mother's care.

In April 2013, the Department reported to the court that mother was still uncooperative with the Department: she had not allowed the social worker to visit the children in the home, had missed appointments with the social worker, and had not returned "countless phone calls." On these grounds, the social worker said that she was unable to make "accurate assessment of the children . . . [or] assess whether the father [] is in the home [-] this places the children at great risk for further abuse or neglect." The Department also submitted a letter from the children's school principal stating that Elizabeth had told a staff member that father is "around" but that mother told Elizabeth to say that "father did not live with them, that he did not hit them and she has not seen her father in a long time."

On April 4, 2013, the court sustained the supplemental petition regarding father's physical abuse and mother's failure to protect.[5] Children's counsel requested that Dinah

---

[5] All rulings prior to April 4, 2013, were made by Referee Terry Truong. At that point, Judge Carlos Vasquez was assigned to the case.

be permitted to return to mother's custody as the other siblings were there and there "doesn't seem to be any risks at this point in time . . . . " The Department objected on the grounds that mother had failed to protect the children. The court ordered that the children remain in mother's custody. Father was still allowed visits monitored by a Department-approved monitor.

5. *The Children Are Finally Removed From Parental Custody*

On May 16, 2013, the Department reported receiving a referral from a school staff member stating that Jacob complained that his shoulder was hurting because father had hit him on the shoulder the night before. The caller said she did not observe any "marks on [Jacob's] shoulder." The caller further stated that, two months prior, school staff had seen father in the car with mother when mother came to pick Jacob up from school. At that time, Jacob said to a staff member that father was in the home, and mother immediately denied it.

The Department interviewed the children. Elizabeth said that father "sometimes comes over and spend[s] the night." Jacob showed the social worker a "reddish color mark" on his shoulder, and, when asked what happened, said that " 'my dad hit me with a belt.' "

On May 20, 2013, the Department received another referral from a mandated reporter stating that Jacob had disclosed that father had hit him with a belt and mother had hit him "with her hand on his mouth." The caller observed a "mark/scab" under Jacob's right eye and "numerous little 'dots' around the mouth." Jacob further said that mother used a belt to hit him and "had even hit him on his genital area." The court

8

authorized the detention of the children, and they were placed with maternal grandmother.

On June 3, 2013, a supplemental petition (the Second Supplemental Petition) was filed alleging that father physically abused Jacob by striking the child's shoulder with a belt, and that mother had failed to comply with court orders by allowing father to visit the children without a court-approved monitor present. In the Detention Report, the social worker stated that mother continued to be uncooperative: mother had only allowed the social worker to visit the home once in the past six months, and had not allowed the social worker to view the two bedrooms in the home. At the detention hearing, the court continued the children's placement with maternal grandmother.

In the Jurisdiction/ Disposition Report, the Department reported that mother continued to deny that father had had access to the children. The Department recommended that the children not be reunified with mother. On September 10, 2013, the court sustained the Second Supplemental Petition's allegations regarding father's physical abuse of Jacob and mother's failure to protect, removed the children from mother's custody, and ordered reunification services for both parents. Mother and father timely appealed.

### CONTENTIONS

Mother and father argue there was no substantial evidence supporting the juvenile court's findings that father physically abused Jacob and mother failed to protect him.

## *DISCUSSION*

1.    *Standard of Review*

Review of the sufficiency of the evidence to uphold juvenile dependency jurisdiction is limited to a determination of whether there is any substantial evidence to support the juvenile court's findings.  (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) Under this standard of review, the whole record is examined in a light most favorable to the findings and conclusions of the juvenile court, and under deference to the lower court on issues of the credibility of the evidence and witnesses.  (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393.)  We do not reweigh the evidence, evaluate the credibility of witnesses or resolve evidentiary conflicts.  The appellant has the burden to demonstrate there is no evidence of a sufficiently substantial nature to support the findings or orders.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  "If there is any substantial evidence, contradicted or uncontradicted, which will support the judgment, we must affirm."  (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.)

2.    *Mother's Appeal*

Mother contends that the record contained contradictory evidence regarding Jacob's shoulder injury: one school staff member said, on May 13, 2013, that Jacob "had no marks on his shoulder," and three days later, a social worker observed a "reddish-color mark" on Jacob's shoulder.  However, upon reviewing a record for substantial evidence, we do not resolve evidentiary conflicts, but defer to the juvenile court's credibility assessments of witnesses.  Here, the juvenile court had the authority

to find the social worker's account of Jacob's injury credible, and to discount observations by the school staff member.

Mother also contends there was insufficient evidence that father had caused Jacob's shoulder injury or that mother knew about it. This argument is without merit. First, two mandated reporters and a social worker reported that Jacob had told them father hit him on his shoulder. Second, these statements were corroborated by a "reddish" mark on Jacob's shoulder observed by the social worker. Third, when Elizabeth was interviewed regarding these allegations, she said that father "sometimes comes over and spends the night." Fourth, it was reasonable for the court to infer from evidence father was at mother's home, that mother knew he was there. Mother had also obstructed the social worker's access to the apartment, from which the court could have reasonably inferred that she was hiding evidence father was living there. Such a conclusion was also suggested by mother's repeated statements defending father and denying the abuse, despite having previously acknowledged that father had abused both her and the children.

All of this constitutes substantial evidence in support of the court's finding that father struck Jacob on the shoulder and mother allowed father access to the children in violation of the court's order that all his visits be monitored by a Department-approved individual. In addition, when this evidence is considered within the context of the entire record – which contains overwhelming evidence that father was regularly beating the

11

children and that mother defended him at the cost of her children's safety – there is abundant evidence in support of the juvenile court's latest jurisdictional finding.[6]

3. *Father's Appeal*

Father contends there was no evidence (1) he had visited the children in the family home, or (2) had struck Jacob on the shoulder. As explained above, substantial evidence supports these findings.

---

[6] A really disturbing question raised by this distressing record is why the juvenile court repeatedly returned the children to mother and father's custody for over two and one half years when it was clear father was physically abusing the children and mother was not protecting them.

## DISPOSITION

The jurisdictional order is affirmed.


*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


CROSKEY, J.

WE CONCUR:


KLEIN, P. J.


ALDRICH, J.

13